We're here today for oral arguments. We are going to begin with Appeal 23-1266. Leon Carter v. Lizzie Tegels and Mr. Burnett, we're going to begin with you. Good morning. Good morning. May it please the court, the issue before the court today is whether or not Leon Carter's rights were violated at the circuit court trial in Milwaukee, Wisconsin, and whether the writ of habeas corpus should issue. I'll confess to you that I found this case swirling with issues. So did we. And I did my best to condense it. I think the best way to approach it is simply tick off, recite the constitutional rights that Mr. Weaver lost, or Mr. Carter lost. The first involved the bailiff's instruction to the jury in the absence of the court counsel and the defendant that violated the 6th and 14th Amendment because of those absences, and the content of the instruction is also very much at issue, which I'll talk about in a second. The second issue is whether or not Mr. Carter was deprived of appellate counsel and whether the no merit report which counsel issued in which the Court of Appeals adopted verbatim without analysis or discussion on its own violated Anders, Smith v. Robbins, and the McCoy case because there was no discussion of frivolousness, which each of those cases requires, and because there were many things that could have been said on Mr. Carter's behalf, which those three cases also require counsel to discuss. The harmlessness issue is at the center of the case. It's at the center of the case both because if this is a structural defect, a structural condition, harmlessness is completely irrelevant. But regardless, the appellate court ignored, and so did counsel, ignored counsel's absence, ignored the speculative nature of the circuit court's determination that indeed there was no harm, it ignored the structural error involved, and then it ignored the issue of whether it coerced the verdict. Mr. Burnett? Go ahead. I think that's an excellent summary of where we're at, and it's tangled a little bit. Can we just call it the Remmer claim just to simplify it? Sure. What I had difficulty seeing that maybe you could help with is how is the Remmer claim properly before the federal district court in 2254 habeas? And it seems like you understand the question, so I'll just stop there because I had a hard time seeing it in front of the district court. I do understand the question. There are three cases cited in briefing. The first is the Pohl case, which is out of the circuit. The Simmons case, which is Judge Justice Sotomayor's dissent from a denial of cert, and then there's a third case, his name escapes me, Bohn, maybe. When you say cited, cited where? Cited in the principle brief and in the reply brief. Simmons is cited in reply for sure. Okay. So can I just back you up one second? Sure. Okay. If you just focus on the 2254 petition itself, right, as opposed to the briefing in support of it? Right. And the reason that I'm doing that is because there may be a question about whether the briefing amended the petition. Right. Okay. And whether that's a timely amendment. So in the first instance, can you just address the petition and its four corners? Do you think the Remmer claim was in there? I do if the circuit court looked for it or the district court looked for it. And that's the problem. District courts are very, very busy. They have many of these cases and putting a responsibility on a district judge to find cases or arguments that are not expressly articulated puts a burden. And I fully acknowledge that. The cases I just alluded to, however, say that if the argument is in the brief or the petition and Simmons, Sotomayor's opinion says the circuit court should ask. And I think that's what Judge Pepper should have done here because the Remmer claim is so central to this case. And obviously, Mr. Carter was proceeding pro se. So the question for this court is whether or not the petition is the guiding document not to be departed or deviated from, or whether federal rules of civil procedure and the lenient standard as to pleadings apply when the rules say expressly they apply to habeas claims unless otherwise disclaimed. Does that answer your question? Yeah. No, it's helpful. Judge? I have the same question about your chronic claim. Are you attempting to bring a separate habeas claim based on chronic? And if so, two questions. Where was that presented before the district court? And where was that raised before the state court to avoid a procedural default? I don't remember if chronic was cited to the district court. I doubt it was. But I don't distinguish between chronic and Remmer. They are all cases that deal with extraneous information that is presented to the jury. I'm sorry to interrupt. They seem like Sixth Amendment claims. They seem like ineffective assistance of counsel claims. No, the ineffective assistance of counsel was expressly rejected by Judge Pepper for exhaustion reasons. Right. So what we have is we have a Sixth Amendment. But it seems like you're trying to put Sixth Amendment claims into a Fourteenth Amendment claim. It's a Sixth Amendment claim to the extent that it involves the deprivation of counsel and the right to be present at a critical stage of the proceeding, the defendant's right. And that is sort of what Remmer involves because extraneous information was presented to a jury, basically an attempt to bribe a juror. And the judge told the prosecution about it, and he told the FBI about it, but he didn't tell the defendant about it. Was there any request below for a hearing to figure out exactly what the jury asked and exactly what was said back to the jury by the deputy? No, and that's a critical part of the problem, especially the harmlessness analysis. What Remmer says the circuit judge should have done is hold a hearing. Mr. Burnett, you tried a lot of cases looking at that transcript that's in the supplementary appendix. It sounds like Judge Brostrom sets it up that if there is a question, I will call you and I'll bring you in. And then after the fact, this is after the verdict is returned, then she brings it to the attention of the parties. And the defense counsel is savvy enough to move for mistrial. There isn't a request for a trial. Is the transcript to be read that this was just before Christmas? Is that why this is all happening? I looked at a number of things in the transcript to try to figure that out. I don't know what the times are. I know the question came in at noon, and the bailiff seemingly instructed around the noon hour. But I don't know when the verdict came back. And the only thing we know is that it came during the lunch hour, and that seems to be the only reason that Judge Brostrom didn't call the lawyers and have the defendant present. Is that correct? I'm getting the sense from the transcript Judge Brostrom didn't know about it and that the bailiff took it upon themselves to instruct the jury. When you say didn't know about it, didn't know about it at the time it happened. At the time it happened. So ordinarily, Judge Brennan is absolutely right. You'd call the counsel, you'd bring everybody in, you'd talk about what you're going to tell the jury, you would allow time for argument and objection. And then the judge would make a decision. The troubling aspect of this is that Judge Brostrom didn't tell anybody about the question until after receiving the verdict and after discharging the jury. It seemed like her position with regard to the integrity of the verdicts was that because she either would have given that instruction or the collective wisdom of the lawyers and her would have been similar to what the bailiff said, that that's enough. What are your thoughts on that reasoning? My thought is that that is an absolute denial of the right of due process to the representation by counsel. What Judge Brostrom appears to have done is made up her mind before anybody knew about it or anybody had a chance to say anything about it. Let me map that reasoning then. We don't have a lot of Remmer cases. We've got a few, Hall, Oswald, et cetera. Mapping those types of jury intrusion questions in terms of severity, it's hard to see this one being as severe, for example, as someone trying to bribe a juror. To some extent, the case is only marginally a jury intrusion case. The real problem is the absence of counsel. There is a bounty of cases that say the absence of counsel or the defendant at a critical stage of the proceeding is a deprivation of a constitutional right and requires automatic reversal. I see my time is close to expiring, so I should reserve for rebuttal unless the Court has other questions. Very good. Thank you, Mr. Burnett. Ms. Potts, we'll move to you now for argument on behalf of the State. Good morning. May it please the Court. As you'll recognize, there's a lot of issues floating around in this case. I think that this case can really be distilled to two main points. First is that the no-merit process that was used in this case does not conflict with or run afoul of any right that was clearly established in Anders v. California. The second main point I want to make is that if Mr. Carter had properly raised a REMER claim in his petition, which he didn't, that claim would still not entitle him to federal habeas relief for a couple different reasons. First, he hasn't met the AEDPA standard, the Anti-Terrorism and Effective Death Penalty Act standard. And second, with the findings of fact that were found by the circuit court, he simply can't establish the requisite level of prejudice to meet the correct standard. I'm going to start with Anders unless the Court would like to start with REMER. Let's talk about Anders just for a bit. We're to look and determine whether or not there's a decision on the merits. And whether we go de novo or deferential is dependent upon that. This is a circumstance in which we have an Anders determination by the Court of Appeals. This particular issue was obviously in a footnote. How important is that call of whether AEDPA applies at the Anders stage? And that's just the tip of the iceberg in terms of that question because if we go de novo and don't go AEDPA and indicate that the decision on the merits more is required, there's really nothing to look through to. And might we find ourselves in an automatic loop where every Anders case at the Court of Appeals would go outside AEDPA and I'd be concerned with the flood of cases that we'd have. Yeah, you raise a really good point. So I want to say something about Anders first. One thing that I think is often confused in Anders cases, by even attorneys that do it a lot, is that Anders, the only right that is really clearly established in Anders is to some minimum procedural safeguards to protect indigent defendants and their right to counsel on appeal and to ensure that the state Court of Appeals doesn't allow their attorney to withdraw without considering the merits. And when I say merits, I don't mean meritless. I mean the broader sense of merits described in the Penson case, which is, is this case of any arguable merit? So Anders was designed to put in place or to ensure, not even put in place, to require states on their own to develop minimum procedural safeguards to protect that. Where those safeguards are met, there is not an Anders violation. So is it your position then that it really doesn't matter if it's de novo review or AEDPA deference on the Anders claim because it's just about the procedure, not about the merits? Yes. And am I correct that, I'm sorry, I want to clarify, Ms. Potts, am I correct that you are not contesting that Carter failed to exhaust this 14th Amendment procedural claim or didn't procedurally default it? You haven't raised that as an issue. Which claim are you speaking of? The 14th Amendment procedural Anders claim. Oh, yes. We acknowledge that he brought that by petitioning that to the Wisconsin Supreme Court. He exhausted his state court remedies on that, and then that is the one claim he actually did raise in his petition. And so that claim is properly before the court. So what I would say is, regardless of AEDPA or no AEDPA, since it is, as Judge St. Eve said, since it is a really pretty basic, undisputed procedural set of safeguards that is the only thing that a defendant is constitutionally entitled to, that usually is going to be de novo review. We argue that AEDPA should apply to that because we think there's an argument to be made that under Richter, the language of Richter says, if it is presented to a state court and the state court denies relief, that's a decision on the merits for federal habeas process purposes. So the word decision is enough. Does that have to be decision with reasons or something like that? Right. We would argue under the Richter language. But was the procedural aspect presented as opposed to the no merits? If I can remember correctly, it was presented a little bit like the federal habeas petition, which is that he alleged that his right to a meaningful appeal was violated. And I think, again, if we're a pro se individual. Was that because the Anders procedure hadn't been followed, though, or because of the no merits? He disagreed with the determination. This is where I would say that a lot of – that he didn't know would be my guess. He didn't know. Many attorneys don't know. But giving him the benefit of the doubt, saying that that should include the properly challengeable constitutional right to these safeguards that Anders came up with, saying we'll give him the benefit of the doubt that he did raise that, he's only entitled to those safeguards, not to an outcome. So the bottom line on that is you're not arguing it's defaulted or anything like that? No. Not the Anders claim. Right. Okay. But we're narrowing it, I would say. Sorry to interrupt you. But we want to just make sure that the court knows that that claim isn't as broad as he briefs it. Okay. So if you go back to – my question is about the relationship between what the so-called Anders process and what the Supreme Court said in Harrington v. Richter. In Harrington v. Richter, to my eye, the court is clear that state courts, by virtue of the U.S. Constitution, are not under any kind of opinion-writing requirement or obligation to provide reasons for anything. Okay? Because of the federalism intrusion. And so is there any problem vis-à-vis Anders process, Anders procedures, if a state court simply says, we have carefully reviewed the no-merit report, taken a look at the record ourselves, and we affirm the denial of relief, we affirm the conviction and sentence, and they say no more? It's two sentences. That is constitutional under Anders. Under Harrington v. Richter, even more specifically. And you're talking about – and you bring up Harrington for the reason that you want to know whether that's like a judgment on the merits. No. I bring up Harrington because one of the points that Mr. Burnett does a good job arguing is he's saying there's really no embracing of grappling with the Remmer claim.   And I think that's an accurate description of the Wisconsin Court of Appeals opinion. I don't think there's any really ground to debate that. But I think the challenge for Mr. Burnett is to square that with what the Supreme Court said in Harrington v. Richter. There doesn't have to be.  Put differently, what's the source of the obligation that requires the Wisconsin Court of Appeals to write a detailed opinion? Where does that obligation come from? There is not that obligation related to an Anders claim. What I would say, and maybe tell me if this doesn't touch on what you're asking, but where a defendant like Mr. Carter has a Remmer claim that he's concerned about, but it's a no-merit context, and the state of Wisconsin Court of Appeals follows an Anders-approved procedure, like it did in this case, and disposes of it without explanation, Mr. Carter has a couple options, but it's not an Anders claim. He can attack the efficacy of his appellate counsel through a Knight petition, which is a state habeas petition in the Court of Appeals, or he can exhaust that Remmer claim still by petitioning it to the Wisconsin Supreme Court and then bring it as an independent Remmer claim in his petition for habeas relief. And it will be evaluated outside of the Anders claim. So it should be separated is my position on that. So had he included it in his federal habeas petition, which he did not, but even if he did, he would have properly then exhausted it. He would have exhausted it in the state court, and he could bring it in his petition. The problem for Mr. Carter is he didn't know to do that, and so he didn't do that. And the only claim he brought in his federal habeas petition really related to errors on appeal and not at the trial court. And unfortunately, Anders does not encompass any rights beyond those procedural safeguards. So that's where it's unfortunate for him at this level. I will say, just because time is limited here, that even if we want to get to the Remmer claim, even if you want to look at that, and even if he had properly brought that in his federal habeas petition, it wouldn't be a basis for federal habeas relief at this point because for two main reasons. One, he hasn't made the requisite showing under AEDPA which would require him to show that the state court decision on this issue violates something clearly established in Remmer. And Remmer is a very short opinion. It doesn't clearly establish much. But what it does establish is not clearly applicable to the facts of his case. Remmer did not involve a deputy answering a question by the jury. What about the Moore case? Moore, the judge, talks directly to the jury about the defense. Yes, it was an in-camera discussion, I think. Yeah, that's a different set of facts. I think that that also, if I remember correctly, they did not apply the presumption to. And I think what we see in the Remmer cases, and again, because we're on federal habeas here, we're looking at U.S. Supreme Court cases, so we don't have a United States Supreme Court case clearly establishing that the Remmer presumption of prejudice applies on these facts. And I'll take it one more step in Carter's favor. Even if we applied that prejudice, that presumption of prejudice, the state court did not run afoul of Remmer. While there wasn't a very formalized hearing on this issue, what the transcript shows is that the court did essentially what the Remmer court wanted courts to do, which was not decide this ex parte, but to inform the parties of what happened and ask for their input on this issue, and then determine itself its impact on the verdict. And that is essentially what she did. Well, but she didn't really hold a hearing until after the verdicts, and she did contradict herself. She said, listen, I'm going to bring you in. If there's a question, then she doesn't do it. And it's unclear whether she knew when she was told by the deputy what the deputy had told, so we don't know when in the deliberation process the judge exactly knows. What I do know is if you look at the case law where there are similar types of cases, a lot of times it's after the verdict comes back because that's when things are found out, and the presumption is not always applied. Let me go even further. The Supreme Court is beginning to call into question whether Remmer is a constitutional claim. Yes, I noted that. Does the state have a position on that? I mean, it doesn't really articulate a constitutional claim. It articulates a best practice in a way. Now, that's not to say I don't want to say the state of Wisconsin has a formal opinion on that at this point in this case because I don't think we need to, but what it emphasizes, what your question really emphasizes is the fact that it certainly, Remmer doesn't clearly establish that the presumption applied in this case. Even if it were applied, I think it's important to remember, and this is where the briefing gets a little confused, I think, brings in a lot of different constitutional theories. This is not a structural error case. This is not a Sixth Amendment denial of counsel case. If we're generous with Mr. Carter and we let him bring in a Remmer claim, that's an impartial jury claim, due process claim, and we simply don't have a violation here on the record that we have. Is it your position that he procedurally defaulted the Remmer claim before the state court? No. My position is he didn't raise it in his habeas petition. I think if he had raised it in his habeas petition, it would have been. Your point is it's never separately adjudicated by the federal district judge in the 2254 resolution. Correct. The 2254 resolution is all about denial of a meaningful right to appeal. Correct. One thing I'll just say with that too is it's tempting to want to bring in any new argument in a brief or find any support for a pro se petitioner, but in this case, keep in mind that the district court has an obligation to screen these cases before the respondent is required to answer. So it had been screened. We had answered. We had moved to dismiss one of the claims. The case was distilled down to a single claim. Carter confirmed that he only meant to bring one claim. So there was a lot of back history here that would leave the respondent in the court not expecting another claim being added in his brief and support. So that's just a little back history. It's the product of him not having counsel. Correct. I would agree. And the downside of him not having a right to counsel at the 2254. He's not trained to know what to include and not to include. Correct. But yet even if you consider it, I don't think he can show on this record the showing he needs to show under AEDPA. And even if he showed a constitutional violation, we'll take it that far. Given the circuit court's findings that she would have said the same thing, I don't believe that Mr. Carter could show the actual level of actual prejudice required under the BREC standard. And I want to just kind of make clear for the record here, too, that BREC is independent of that constitutional violation. If you can show prejudice to establish a REMER violation or show a lack of harmlessness, you still have to show prejudice under BREC. So just because you might, the defendant... I mean, the Supreme Court's crystal clear on that.  Yeah. You're right. I thought that the certificate of appeal was a little vague on that. So that's all I have unless you have a question for me. To buttress the point, she does say that that's what she would have said. This is Judge Brostrom. Sure. She also says, and I'm at Supplementary Appendix 55, that's what the jury instructions say. So she's buttressing what she thinks would have been. Now, I think it is a stretch, though, to say it was a hearing because she says anything from the state on that, anything from the defense? So, I mean, she's asking for a record to be made. That's fair. It's a fair implication. But there is a fait accompli aspect to it. A couple things, if I know my time's up and I just respond to that. A couple points I would just add to that are that the jury had not gone home. The judge had specifically asked the jury to stay. So there was that element. Is that clear in the record? It is. It is. I think the judge says that to the jury because that's how I know. But, yes, I think the judge says, I want you to wait until you're excused, but please wait until we're done. She can talk to them. Yes. And then the second thing I will say is that while there wasn't a formalized hearing on this, this was an opportunity for a defense counsel to say, hey, we need a formalized hearing, or I wouldn't have said the same thing, or any sort of response that would undercut the finding by the court that this did not impact the integrity of the verdict. And the attorney didn't say that. Now, one thing I'll also note is the attorney specifically said only the judge should answer questions. Did not say, and we need to be there. So I think there's – I don't think anyone at the time thought it was as big a deal as it has kind of grown on appeal here. These things happen, unfortunately, all the time. They usually are not given an Allen instruction, which is, you know, they call it the atomic bomb instruction or whatever, until a jury has expressed several times that they can't reach a verdict. So to go straight to that instruction as proof of prejudice I don't think is appropriate on this record. Thank you, Ms. Potts. Thank you. Mr. Burnett, we're going to give you some extra time because we held Ms. Potts up here, so we'll give you five minutes on rebuttal. There's only a couple of issues that I really want to address. The first is the Anders claim. In listening to counsel's argument, we have a fundamental disagreement. Counsel argues that that is about process and only process, and as long as Wisconsin's process met constitutional requirements, there's nothing to see here. Are you not raising that claim? No, we are not raising that. I'm sorry, that was a double negative. Are you raising a procedural violation of Anders' claim? Yes, we are saying that it is not the process, not the Wisconsin procedure, but it's the application of that procedure that's the problem. Anders, and this goes directly to Judge Scudder's question, Harrington v. Richter, Anders says in order to fulfill constitutional obligations, the Court of Appeals and counsel need to do two things. Number one, they have to say this would be a frivolous appeal. Now, they can use a variety of words to say that, but you've got to say it because arguable merit, the words used here, has two meanings. It may mean there's a highly improbable chance the defendant will prevail, even though he or she has legitimate arguments. Can I pause you there? Yes. So if you read Anders, Smith v. Robbins, and Harrington v. Richter all together, in your judgment, is there a legal problem if a Court of Appeals says this and only this? We have received and reviewed the no merit report, we have independently reviewed the record, and we affirm the conviction and sentence. Yes, there is, because there is nothing in there that says we, the Court of Appeals, have determined the claim is frivolous. But the key is we've read and adopted the no merit report, which is what happened here. There was no suggestion. Okay, and when you answer that yes, which is what I thought you would, where does the source of that, what's the source of that obligation? Anders, or it's McCoy, Anders, and the third one, whichever. It's the Supreme Court, Anders line of cases. There may be a conflict between Harrington and that line of cases, but that line of cases is very clear. I understand. So that's the argument, is that it is not necessarily the process as spelled out in the statutes, but it is the application of that process. The second thing that was problematic is there was no examination of arguments that could have been made and said this won't, you know, it's a structural error, that won't work because of this, and it would be frivolous to make that claim. Anders requires that too. So what the no merit report here is, it's an amicus brief. The second point is the note that the judge said that I would have instructed the same way. I would have said the same thing. I don't know how you square that with the cases that involve the denial of counsel. Those require a hearing. Those require a hearing. The Penson case, although it was a court of appeals, it was appellate counsel case, said you cannot decide that even if counsel were here, we would have found against the defendant anyway because that is depriving the defendant of exactly what he or she is entitled to. Judge St. Eve, did you have a question? No, thank you. Okay. And that's important. Judge Brock Brostom made up her mind before she ever revealed this note. The jury was already gone. It was discharged. And as Wisconsin practitioners know, once that verdict is received, that's it. You don't have a chance to impeach the verdict through testimony of jurors unless it's a very, very limited circumstance. The last thing is, is the Remmer claim was really raised in the Certificate of Appealability. It's the very first question. I see my time is up. Mr. Burnett, you and your firm have put a great deal of time, effort, energy, and this excellent advocacy, so you have the great thanks of the court. Ms. Potts, the same thing for you. Excellent advocacy by both sides. It's a pleasure to have you here. Thank you, Your Honor. Thank you. The case will be taken under advisement.